**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN THE MATTER OF: THE COMPLAINT ) | |
| OF CREATIVE YACHT MANAGEMENT, ) | No. 1:14-cv-09050 |
| INC., d/b/a SAILTIME CHICAGO, ) | |
| PETITIONING FOR EXONERATION FROM ) | Judge Samuel Der-Yeghiayan |
| OR LIMITATION OF LIABILITY ) | |

**MEMORANDUM OF LAW IN SUPPORT OF CLAIMANT'S MOTION TO DISMISS
COMPLAINT FOR EXONERATION FROM OR LIMITATION OF LIABILITY**

Claimant, PEGGY M. BLENNER, as Independent Administrator of the Estate of MEGAN BLENNER, Deceased, by and through her attorneys, CLIFFORD LAW OFFICES, P.C., and in support of her Motion to Dismiss the Complaint for Exoneration from or Limitation of Liability of CREATIVE YACHT MANAGEMENT, INC. d/b/a SAILTIME CHICAGO (hereinafter "SailTime") pursuant to Federal Rule of Civil Procedure 12(b)(6) states as follows:

**INTRODUCTION**

1. On May 31, 2014, the AXESS, a 33-foot motorboat (hereinafter "the Boat") owned by Axess Holding Company, LLC and operated by Orest Sopka, was en route from New Buffalo, Michigan to Chicago, Illinois. Megan Blenner, deceased, Ashley Haws, deceased, and Shai Wolkowicki were all passengers aboard the AXESS. Several miles east of 31st Street in Chicago, the AXESS suffered what is believed to be a mechanical failure and began to take on water, ultimately sinking.

2. On November 11, 2014, Creative Yacht Management, Inc. filed a petition for exoneration from or limitation of liability. (Exhibit 1). Attached to said petition was a Boat Management Agreement identified as Exhibit A.

3. The Boat Management Agreement states that SailTime was the "Manager" and Axess Holding Co., LLC was the "Owner" of the AXESS. (Exhibit A, Boat Management Agreement at p. 1). It further states:

> **7.3** **Ownership of the Boat**. This agreement is not a lease, sale, or the creation of a security interest. The Owner shall at all times retain sole ownership and title of the Boat, and the Manager shall not have or at any time acquire any right, title, equity, or other interest in the Boat, except the right to possession and use as provided for in this Agreement. However, Manager shall have the right to enter into bareboat charters on behalf of Owner, as provided for in the SailTime Member Agreement. (Ex. A at p. 5).

4. Pursuant to the Agreement, the Owner, Axess Holdings Co., LLC ("Axess"), paid for all of the docking and winter storage. (Ex. A at p. 4). The Axess paid for insurance on the boat; SailTime assisted with choosing an insurer and policy. (Ex. A at pp. 4, 6). The Axess also paid all taxes associated with the boat. (Ex. A at pp. 3, 8). The Axess was responsible for costs of equipment and upgrades. (Ex. A at p. 5). The Agreement stated:

> 16.8 Relationship of the Parties. Nothing in this Agreement will be interpreted or construed to create any relationship between the Parties other than that of independent contracting entities. Neither Party will be authorized to obligate or to bind, in any manner, the other Party or to act in the name of the other Party. In addition, neither Party will represent to third parties that any joint venture or other relationship invoking joint liability has been created pursuant to the terms of this Agreement. (Ex. A at pp. 10-11).

5. SailTime maintained, serviced, and repaired the boat. (Ex. A at pp. 4, 5). SailTime brings an action to exonerate or limit its liability for the wrongful deaths of Megan Blenner, Ashley Haws, and Orest Sopka, as well as the injuries suffered by Shai Wolkowicki, by claiming that it "stands in the shoes of the 'owner' with respect to the benefits of exoneration from and limitation of liability provided for in 46 U.S.C. §§ 30501, et seq." (See Complaint, 1:14-cv-09050, Doc. #1-1, p. 4). However, SailTime is neither the owner of the Boat, nor does it "stand in the shoes" of the owner to limit its liability for negligently maintaining the boat. Thus, Sailtime cannot state a claim under the Limitations of Liability Act and dismissal is warranted.

2

# ARGUMENT

## I. Ownership of the vessel is a pre-requisite for exoneration or limitation of liability.

6. The Limitation of Liability Act is "very specific about applying to 'owners' and the court-created exceptions are extremely narrow and have been created for situations in which the ship owner is *directly* affected." *In re Waterman S.S Corp.*, 1992 WL 116052, at *3 (E.D. La. May 6, 1992) (emphasis in original). For example, a state action against a separate party under a product liability claim is too remote to justify crossing the line between federal limitation and saving to suitors rights. *Id*. Similarly, state actions against an operator and manager of a ship in limitation have been found to be too remote to justify an injunction against them. *Id*., citing *Complaint of Amoco Transp. Co.*, 1979 A.M.C. 1017, 1020-21 (N.D. Ill. Apr. 17, 1979).

Likewise, a state action against SailTime as the manager of the Boat is too remote to justify maintaining an action under the Limitation of Liability Act.

## II. SailTime's Boat Management Agreement expressly disclaims ownership of the AXESS.

7. "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed.R.Civ.P. 10(c). Thus, when a plaintiff attaches to the complaint a document that qualifies as a written instrument, and its complaint references and relies upon that document in asserting its claim, the contents of that document become part of the complaint and may be considered as such when the court decides a motion attacking the sufficiency of the complaint. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (citing *Centers v. Centennial Mortgage, Inc.*, 398 F.3d 930, 933 (7th Cir. 2005)); *see Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir.2002) ("The court is not bound to accept the pleader's allegations as to the effect of the exhibit, but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material.").

8. It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations. *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454-55 (7th Cir. 1998) (citing *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co. of Chicago*, 927 F.2d 988, 991 (7th Cir. 1991)). *See also Centers*, 398 F.3d at 933 (to the extent that the terms of an attached contract conflict with the allegations of the complaint, the contract controls); *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 754 (7th Cir. 2002) ("where a plaintiff attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim"); *Smith v. Cash Store Mgmt., Inc.*, 195 F.3d 325, 332 (7th Cir. 1999) (where exhibits contradict the allegations in a complaint to which they are attached, the exhibits trump the allegations). *See also, Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010) (in a Rule 12(b)(6) motion to dismiss for failure to state a claim, the exhibits trump the allegations in the complaint); *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n. 8 (3d Cir.1994) (same). In fact, a "plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment." *Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 529 (7th Cir.1999) (quoting *In re Wade*, 969 F.2d 241, 249 (7th Cir.1992)).

9. Since SailTime attached the Boat Management Agreement to its complaint for exoneration or limitation, this Court should consider its terms in ruling on a motion to dismiss. As the Boat Management Agreement, specifically disclaimed SailTime's ownership of the boat, it cannot be considered an owner solely for the purpose of limiting its liability in this case. The SailTime Boat Management Agreement states that SailTime was the "Manager" and Axess Holding Company, LLC was the "Owner" of the AXESS. (Ex. A at p. 1). It further states: "The Owner shall at all times retain sole ownership and title of the Boat, and the Manager shall not have

or at any time acquire any right, title, equity, or other interest in the Boat, except the right to possession and use as provided for in this Agreement." (Ex. A at p. 5). The Agreement specified that it did not create any relationship between the parties other than that of "independent contracting entities", and neither party was authorized to act in the name of the other Party. (Ex. A at p. 10). In addition, neither party could "represent to third parties that any joint venture or other relationship invoking joint liability has been created." (Ex. A at p. 11).

10. The contract makes clear that SailTime was never the owner of the Boat and it never "stood in the shoes" of the owner. By the terms of the Boat Management Agreement, Axess Holdings Co., LLC was the sole owner of the AXESS. In light of the aforementioned, the petition for exoneration or limitation of liability should be dismissed.

> **III.   The Boat Management Agreement ceded ultimate authority and responsibility to Axess Holding Company, LLC, and so SailTime cannot be an owner for purposes of the Limitations of Liability Act.**

Even if SailTime did not expressly disclaim ownership, it cannot be considered an "owner" to limit its liability in this matter. The Seventh Circuit interpreted "owner" as it is used in the Limitation of Liability Act in *Matter of Oil Spill by Amoco Cadiz Off Coast of France on March 16, 1978*, 954 F.2d 1279 (7th Cir. 1992). In that case, Transport owned the ship and AIOC was responsible for operations, maintenance, and repairs.[1] AIOC brought a limitation of liability action, but it was dismissed for lack of ownership. Ultimately, only Transport, as the actual owner, could maintain a limitation of liability action.

First, the Northern District of Illinois dismissed AIOC's petition to limit liability on the ground that it was not an "owner" of the vessel pursuant to the Limitation of Liability Act.

---

[1] The parties are simplified for clarity in this illustration. The case involved various branches and subsidies of Amoco, including AIOC, Tankers, Transport, and Standard. Here, "Transport" refers to the owners and "AIOC" to the operators/maintainers of the boat.

5

*Complaint of Amoco Transp. Co.*, 1979 A.M.C. 1017, 1024 (N.D. Ill. Apr. 17, 1979). AIOC argued that the district court incorrectly assumed that only the registered owner of the vessel, Transport, could claim ownership status; but the court held that AIOC failed to plead sufficient facts to show that it had "the requisite possessory, managerial, and operational control of the vessel to justify even a preliminary finding that they were 'owners.'" *Id.* at 1024. Rather, it must be apparent from the face of the pleadings that the plaintiff is entitled to limitation. *Id*. at 1022 (citing *E.I. duPont DeNemours & Co. v. Bentley,* 19 F.2d 354 (2nd Cir. 1927)).

In affirming, the Seventh Circuit further explained that, based on the contracts between Transport and AIOC, "the latter was brought in to assist and advise Transport with regard to the maintenance and operation of the ship. Ultimate authority for maintenance and operation of the [vessel], however, remained with Transport alone." *Matter of Oil Spill by Amoco Cadiz Off Coast of France on March 16, 1978*, 954 F.2d at 1302. Only Transport had the requisite degree of "possessory, managerial, and operational control" of the boat; thus, dismissal of the petition to limit liability with regard to AIOC was appropriate. *Id*. at 1303.

Other courts have come to the same conclusion regarding the meaning of "owner" when limiting liability. For example, in *Birmingham Southeast LLC v. M/V Merchant Patriot*, 124 F.Supp.2d. 1327, 1338-39 (S.D.Ga.2000), the court found that a vessel's contractor did not qualify as an owner where the contractor oversaw maintenance and prepared maintenance budgets, but the title owner approved and paid for expenditures. See also *In re Am. Milling Co., Ltd.*, 409 F.3d 1005, 1016 (8th Cir. 2005) (agreeing with *Birmingham Southeast LLC* and *Oil Spill by Amoco Cadiz*, that a contractor did not enjoy ownership status under the Act).

SailTime has not pleaded sufficient facts to justify finding it an owner of the Boat. Just as in *Oil Spill by Amoco Cadiz,* the Boat Management Agreement makes clear that SailTime's

6

relationship to the boat owner was limited to assistance and advisement with regard to the maintenance and operation of the Boat. The Owner paid for the insurance on the boat. (Ex. A at p. 6). Sail Time could only enter into charters *on behalf of* the Owner. (Ex. A at p. 5).

**It is not apparent from the face of the pleadings that SailTime is entitled to limit its liability. Under the contract, SailTime maintained, serviced, and repaired the boat. (Ex. A at pp. 4, 5).** Ultimate authority for operation of the Boat, remained with the Owner alone. The Owner was entitled to inspect the boat. (Ex. A at p. 4). The Owner paid for all of the docking and winter storage. (Ex. A at p. 6). The Owner paid for insurance on the boat as well as all taxes associated with the boat. (Ex. A at pp. 3, 4, 6, 8). The Owner was responsible for costs of equipment and upgrades. (Ex. A at p. 5).

Only the Owner, Axess, had the requisite degree of possessory, managerial, and operational control of the Boat; thus, dismissal of the petition to limit liability is required.

## CONCLUSION

WHEREFORE, Claimant, PEGGY M. BLENNER, as Independent Administrator of the Estate of MEGAN BLENNER, Deceased, requests that this Court dismiss the Complaint for Exoneration from or Limitation of Liability of CREATIVE YACHT MANAGEMENT, INC. d/b/a SAILTIME CHICAGO with prejudice.

Dated January \_\_\_, 2015

                                                  Respectfully submitted,

                                                  _____
                                                  Kevin P. Durkin
                                                  Sean P. Driscoll
                                                  Tracy A. Gibbons
                                                  Clifford Law Offices, P.C.
                                                  120 North LaSalle Street
                                                  Suite 3100
                                                  Chicago, Illinois 60602
                                                  (312) 899-9090
                                                  Attorneys for Claimant Megan Blenner