# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF: THE COMPLAINT OF CREATIVE YACHT MANAGEMENT, INC., d/b/a SAILTIME CHICAGO, PETITIONING FOR EXONERATION FROM OR LIMITATION OF LIABILITY | ) ) ) ) Civil Action No. 1:14-cv-09050 ) ) ) |

**CREATIVE YACHT MANAGEMENT, INC. d/b/a SAILTIME CHICAGO'S RESPONSE TO CLAIMANTS' JOINT MOTION TO DISMISS COMPLAINT FOR EXONERATION FROM OR LIMITATION OF LIABILITY**

NOW COMES Plaintiff-in-Limitation, CREATIVE YACHT MANAGEMENT, INC. d/b/a SAILTIME CHICAGO ("Sailtime"), by and through its attorneys, Curt J. Schlom and John C. Stiglich of WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP, and for its Response in Opposition to Claimants' Joint Motion to Dismiss Sailtime's Complaint for Exoneration From or Limitation of Liability, pursuant to Federal Rule of Civil Procedure 12(b)(6), states as follows:

## INTRODUCTION

Sailtime timely filed its Complaint for Exoneration From or Limitation of Liability ("Complaint") seeking the protection of the Limitation of Liability Act, 46 U.S.C. §§ 30501, for an occurrence that transpired on or about May 31, 2014 involving a 33-foot motorboat known as AXESS. In its Complaint, Sailtime alleged that it was for all intents and purposes the *pro hac vice* "Owner" of AXESS pursuant to its obligations under the Boat Management Agreement ("Agreement") between Sailtime and Axess Holding Company, LLC ("AHC"). As such, Sailtime is entitled to the protections of the Limitation of Liability Act.

Claimants, who were passengers and/or the operators of AXESS at the time of the occurrence and have filed or intend to file claims for personal injury against Sailtime in state

1810569v.1

court, move to dismiss Sailtime's Complaint arguing that AHC is the only entity protected by the Limitation of Liability Act. In this regard, Claimants allude to different sections of the Agreement pertaining to AHC's obligation to pay taxes, procure insurance, and hold title/registration to AXESS and argue that the Limitation of Liability Act does not extend to Sailtime.

However, the protections of the Limitation of Liability Act have never been limited to just the titleholder of the boat in question. To the contrary, federal courts have found a boat management company can be protected by Limitation of Liability Act as owner *pro hac vice* if the management company exercises dominion and control over the boat and is responsible for the boat's maintenance. The rationale is that the Limitation of Liability Act is to be liberally construed and should cover the likely target for liability claims.

In this case, Sailtime has alleged that it is owner *pro hac vice* of AXESS because pursuant to the Agreement, it was in control of AXESS, it determined who could use AXESS and the terms of the usage, it was responsible for maintaining certain aspects of AXESS at its expense, and it had a financial interest in the revenue generated from AXESS. As such, Sailtime's Complaint adequately alleges that Sailtime is entitled to the protections of the Limitation of Liability Act so Claimants' Joint Motion to Dismiss must be denied.

## STATEMENT OF FACTS

On May 31, 2014, AXESS was en route from New Buffalo, Michigan to Chicago, Illinois when it sank to the bottom of Lake Michigan. (*See* Complaint, Docket Entry 1, at ¶ 7). Claimants, Shai Wolkowicki, Orest Sopka, Meghan Blenner and Ashley Haws, were all passengers on the Boat at the time of the occurrence. *Id.* Claimants have filed or intend to file

2

state court tort actions against Sailtime seeking damages for personal injury arising from the occurrence. *Id.* at ¶¶ 10-12.

Prior to the alleged occurrence, AHC and Sailtime executed the Agreement pertaining to AXESS. (*See* Agreement, Exhibit A to Docket Entry 1). Pursuant to the Agreement, AHC and Sailtime agreed to the following key terms:

- Sailtime accepted AXESS into its program and agreed to manage AXESS as provided in the Agreement. *Id.* at § 2.1.

- **AHC had no right to use AXESS** except as a Member of the Sailtime program. *Id.* at § 4.3 (emphasis added).

- AHC was required to make AXESS available to Sailtime at all times. *Id.* at § 6.3(a).

- Sailtime was required to maintain AXESS in seaworthy condition and perform regular maintenance of equipment on AXESS **at its expense**. *Id.* at § 6.4(b), 8.1 (emphasis added).

- Sailtime was responsible for making a reasonable effort to check that Members who used AXESS were certified for AXESS and educated on the AXESS' systems. *Id.* at § 6.3(f).

- Sailtime had the exclusive right to use AXESS as part of its fractional boat ownership program and had authority to enter into charter agreements concerning AXESS. *Id.* at § 7.1 and 7.3.

- Sailtime had the authority to rent or lease AXESS and utilize it for instructional purposes in order to generate additional revenue from AXESS. *Id.* at § 14.2.

- Sailetime was responsible for maintaining all safety equipment on AXESS. *Id.* at § 8.2.

## ARGUMENT

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990) (quoting *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989)).

A motion to dismiss should only be granted when the plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Hernandez v. City of Goshen*, 324 F.3d 535, 537 (7th Cir. 2003). Here, Sailtime pleads sufficient facts showing that it is entitled to the protections of the Limitation of Liability Act for this occurrence so Claimants' motion must be denied.

## I.     SAILTIME IS COVERED BY THE LIMITATION OF LIABILITY ACT AS OWNER *PRO HAC VICE* OF AXESS.

Claimants' motion is predicated on the notion that an entity must be the titleholder of the boat in question in order to seek the protections of the Limitation of Liability Act. However, the Supreme Court ruled in 1929 that the term "owner" is "untechnical" and should be liberally construed for purposes of the Limitation of Liability Act so as not to defeat the intent of Congress to encourage maritime trade. *See Flink v. Paladini*, 279 U.S. 59, 63 (1929). As such, title ownership is not required under the Limitation of Liability Act. *Dick v. United States*, 671 F.2d 724, 727 (2nd Cir. 1982). Rather, as a general rule, one who is subjected to a shipowner's liability because of his exercise of dominion over a vessel should be able to limit his liability to that of an owner. *Dick*, 671 F.2d at 727; *Admiral Towing Co. v. Woolen*, 290 F.2d 641, 644-46 (9th Cir. 1961); *In re Petition of United States*, 259 F.2d 608, 610 (3rd Cir. 1958); *Complaint of B.F.T. No. Two Corp.*, 433 F.Supp. 854, 871-73 (E.D. Pa. 1977); *The Milwaukee*, 48 F.2d 842 (E.D. Wis. 1931). The Limitation of Liability Act is designed to cover one who is a "likely target" for liability claims predicated on its status as the person responsible for the vessel's maintenance and operation. *Complaint for Exoneration of or Limitation of Liability of Shell Oil Company, et al.*, 780 F.Supp. 1086, 1089 (E.D. La 1991).

Other jurisdictions have specifically held that a boat management company can be owner *pro hac vice* if it exercises management, maintenance and operational responsibilities for the

4

subject boat. *Shell Oil*, 780 F. Supp. 1089; *Complaint of Chesapeake Shipping, Inc.*, 803 F. Supp. 872, 873 (S.D. N.Y. 1992); *In re Houseboat Starship II, et al.*, 2005 U.S. Dist. LEXIS 36237 (M.D. Tenn. 2005); *In re: M/V Seaboard Spirit*, 2014 U.S. Dist. LEXIS 100287 (S.D. Fla. 2014). For example, in *In re: Starship II*, the plaintiffs alleged that they suffered personal injury from exposure to carbon monoxide on a houseboat they chartered. *In re: Starship II,* 2005 U.S. Dist. LEXIS 36237 at *2. The titleholders of the houseboat as well as the individuals who managed the houseboat on their behalf filed a limitation of liability action, which the manufacturer of the houseboat moved to dismiss. The district court denied the manufacturer's motion to dismiss because pursuant to the houseboat management agreement, the managers had the exclusive right to rent the houseboat to customers, were responsible for providing maintenance services at their expense and exercised control and possession over the houseboat. *Id.* at *9. Accordingly, the district court ruled that the managers could be treated as owners *pro hac vice* under the Limitation of Liability Act. *Id.*

Likewise, in this case, Sailtime's Complaint pleads facts showing that it exercised dominion and control over the operation and maintenance of AXESS and is therefore, entitled to be treated as an owner *pro hac vice* under the Limitation of Liability Act. In this regard, the Agreement sets forth that AXESS was in Sailtime's control for the duration of the Agreement (Ex. A at § 2.1), Sailtime determined who could rent AXESS pursuant to agreements that Sailtime negotiated (Ex. A at § 7.1 and 7.3), Sailtime was responsible for performing regular maintenance on AXESS at its expense (Ex. A at § 6.4(b), 8.1), and Sailtime managed all operational aspects of AXESS while it was a part of the Sailtime program (Ex. A at 2.1). In fact, AHC had no right to possess or use AXESS while AXESS was in the Sailtime program unless it had the permission of Sailtime. (Ex. A at § 4.3). As such, this court should follow the reasoning

5

of *Shell Oil*, *Complaint of Chesapeake Shipping, Inc.*, *In re Houseboat Starship II, et al.*, and *In re: M/V Seaboard Spirit*, by finding that Sailtime's Complaint adequately pleads a cause of action as owner *pro hac vice* of the Boat pursuant to the Limitation of Liability Act and deny Claimants' motion to dismiss.

## II.     THE CASES CITED BY CLAIMANTS ARE DISTINGUISHABLE.

Claimants rely primarily on *Complaint of Amoco Transport Co.*, 1979 A.M.C. 1017 (N.D. Ill. 1979) and *Birmingham Southeast, LLC v. M/V Merchant Patriot*, 124 F. Supp. 2d 1327 (S.D. Ga. 2000) in support of their argument that the Limitation of Liability Act does not cover a non-titleholder of a boat. However, both of these cases are distinguishable from the instant case.

In *Complaint of Amoco Transport, Co.*, Amoco Transport retained Amoco International as a consultant to assist with operation and management of certain vessels. *Complaint of Amoco Transport Co.*, 1979 A.M.C. 1017. Pursuant to the consulting agreement, Amoco International was only in the business of providing advice, which Amoco Transport could reject, Amoco International had no right to control the vessel, and Amoco Transport was responsible for paying for all expenses related to the vessels, including maintenance costs and the crew's wages. *Id.* Based on these terms, the district court ruled that Amoco International did not have the requisite control over operations and management of the vessel to be considered an owner *pro hac vice* under the Limitation of Liability Act. *Id.* The Seventh Circuit upheld this decision on appeal. *Complaint of Amoco Transport Co.*, 954 F.2d 1279, 1302 (7th Cir. 1992).

In *Birmingham Southeast, LLC v. M/V Merchant Patriot*, Cenargo (boat owner) retained V Ships as its manager. *Birmingham Southeast, LLC*, 124 F. Supp. 2d at 1330. There was no written agreement between the parties. *Id.* However, the parties agreed that V Ships was responsible for maintenance of the boat at Cenargo's expense, Cenargo paid the salary of the

6

crew aboard the boat, and V Ships had no financial interest in the boat. *Id.* As such, the district court ruled that only Cenargo was protected as an "owner" under the Limitation of Liability Act because it retained ultimate control over the boat and crew. *Id.* at 1338-39.

Unlike Amoco International and V Ships, Sailtime had control over the operation and management of AXESS during the operative time of the Agreement. As explained *supra*, Sailtime determined who could rent AXESS, Sailtime negotiated the membership agreements for its benefit, Sailtime performed regular maintenance on AXESS at its expense, and Sailtime maintained possession and control of AXESS while it was a part of the Sailtime program. These facts place Sailtime in a significantly different position from Amoco International and Cenargo, both of which acted more as consultants for the boat's owner rather than the owner themselves.

## CONCLUSION

Claimants have not overcome their burden of proving that no set of facts exist that could possibly entitle Sailtime to the protections of the Limitation of Liability Act. To the contrary, Sailtime has adequately plead that it had dominion and control of AXESS pursuant to the Agreement, Sailtime performed regular maintenance on AXESS at its expense, and that Sailtime had a financial interest in AXESS since it determined who could rent AXESS and negotiated the agreements with the renters. Most telling, however, is that AHC had no right to use AXESS unless it had the permission of Sailtime. Accordingly, Sailtime's Complaint sufficiently pleads that it was owner *pro hac vice* of AXESS at the time of the occurrence and is therefore, protected by the Limitation of Liability Act.

WHEREFORE, Plaintiff-in-Limitation, CREATIVE YACHT MANAGEMENT, INC. d/b/a SAILTIME CHICAGO, prays that this Honorable Court deny Claimants' Joint Motion to

1810569v.1

Dismiss Sailtime's Complaint or, in the alternative, grant Sailtime leave to file an Amended

Complaint to cure any alleged deficiency.

Respectfully submitted,

**CREATIVE YACHT MANAGEMENT
INC. d/b/a SAIL TIME CHICAGO**

By:        /s/ Curt J. Schlom
          Curt J. Schlom (#6204308)
          John C. Stiglich II (#6304086)
          WILSON, ELSER, MOSKOWITZ,
          EDELMAN & DICKER LLP
          55 West Monroe Street – Suite 3800
          Chicago, Illinois 60603
          Tel: (312) 704-0550
          Fax: (312) 704-1522
          curt.schlom@wilsonelser.com
          john.stiglich@wilsonelser.com

1810569v.1

9

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on February 11, 2015 he caused the foregoing pleading to be filed with the court by electronic filing protocols using the CM/ECF system, and that a copy of the same will therefore be electronically served upon all attorneys of record registered with the court's CM/ECF system.

/s/ Curt J. Schlom
Curt J. Schlom

1810569v.1