IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF: THE COMPLAINT ) | |
| OF CREATIVE YACHT MANAGEMENT, ) | No. 1:14-cv-09050 |
| INC., d/b/a SAILTIME CHICAGO, ) | |
| PETITIONING FOR EXONERATION FROM ) | Judge Samuel Der-Yeghiayan |
| OR LIMITATION OF LIABILITY ) | |

**CLAIMAINT'S REPLY TO PLAINTIFF'S RESPONSE TO MOTION TO DISMISS COMPLAINT FOR EXONERATION FROM OR LIMITATION OF LIABILITY**

Claimant, PEGGY M. BLENNER, as Independent Administrator of the Estate of MEGAN BLENNER, Deceased, by and through her attorneys, CLIFFORD LAW OFFICES, P.C., and for her Reply to Plaintiff's Response to Claimant's Motion to Dismiss the Complaint for Exoneration from or Limitation of Liability of CREATIVE YACHT MANAGEMENT, INC. d/b/a SAILTIME CHICAGO (hereinafter "SailTime") pursuant to Federal Rule of Civil Procedure 12(b)(6) states as follows:

**INTRODUCTION**

1.  First, it cannot be ignored that SailTime does not – and cannot – dispute that it explicitly disclaimed ownership of the AXESS in the Boat Management Agreement. (See Agreement, Exhibit A to Docket Entry #1 at p. 1). Similarly, SailTime does not dispute that the terms of Boat Management Agreement trump the allegations in the Complaint. *See, e.g., N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454-55 (7th Cir. 1998). Rather, SailTime claims that it is covered by the Limitation of Liability Act as owner *pro hac vice* of the AXESS. For the reasons stated below, the Complaint for Exoneration From or Limitation of Liability must be dismissed.

# ARGUMENT

## I. This Is Not A Commercial Maritime Case.

2. At the outset, it is important to establish that this is not a commercial maritime case. At the time of the incident, SailTime was not operating the AXESS or even renting the AXEES. Rather, at the time of the occurrence, Orest Sopka, through Axess Holding Company LLC, was both owner and operator of the boat. (Ex. A at. p. 11). *See Complaint of B.F.T. No. Two Corp.*, 433 F. Supp. 854, 873 (E.D. Pa. 1977) (stating that "it is because of their status as operators that [charterers] fall within the scope of the limitations statutes"). Any attempt by the Petitioner to define SailTime as an "owner" to limit its liability in this case would be disingenuous and not "achieve Congress' purpose of inducing and encouraging investment in shipping." *In re Complaint For Exoneration From or Limitation of Liab. of Shell Oil Co. et al.*, 780 F. Supp. 1086, 1089 (E.D. La. 1991). Here, as evidenced by the Boat Management Agreement and the facts alleged, SailTime was neither the owner of the boat nor the operator of the boat at the time of the occurrence. (Ex. A at p. 1; see Complaint, Docket Entry #1 at ¶¶ 6-7).

## II. Applying the Limitation of Liability Act to SailTime where it neither owned nor operated the AXESS is inconsistent with the Congressional intent.

3. With the intention of encouraging maritime trade, the Limitation of Liability Act provides shipowners a generous measure of protection not available to any other enterprise in our society. *Esta Later Charters, Inc. v. Ignacio*, 875 F.2d 234, 239 (9th Cir. 1989). The "continuing vitality of this rationale" is "doubtful", as the "Limitation Act, passed in the era before the corporation had become the standard form of business organization and before present forms of insurance protection (such as Protection and Indemnity insurance) were available, shows increasing signs of economic obsolescence." *Esta Later Charters, Inc.*, 875 F.2d at 238, quoting G. Gilmore & C. Black note 2 *supra,* § 10–4, at 822. Many have suggested that the Act, a relic of

an earlier era, provides protections that are neither warranted nor consistent with current reality. *See, e.g., In re United States Dredging Corp.*, 264 F.2d 339, 341 (2d Cir.), *cert. denied*, 360 U.S. 932 (1959) (Hand, J.) ("it is at least doubtful whether the motives that originally lay behind the limitation are not now obsolete"); *In re Holly Marine Towing, Inc.*, No. 00 C 4750, 2003 WL 21384639, at *1 (N.D. Ill. June 16, 2003) (same). *See also Paradise Divers, Inc. v. Upmal*, 402 F.3d 1087, 1090 (11th Cir. 2005) (noting modern criticisms of the Act).

4. "With the availability of incorporation, insurance and other devices to protect shipowners against major disasters, the Liability Act seems oddly out of place in the modern economy; its application could well lead to wholly unexpected and harsh results. We see no plausible reason for adopting an interpretation of the Act that will exacerbate these consequences." *Esta Later Charters, Inc.*, 875 F.2d at 239. Therefore, in a close case, the Limitation of Liability Act should be construed so as to avoid what may be an injustice to the claimants. *Id.* at 238.

5. Here, because there is no maritime trade to encourage and the owner of the boat was also the operator, it would be an injustice to limit SailTime's liability for its negligent maintenance of the AXESS. If Orest Sopka was just another member of the SailTime program and rented the AXESS from them for the day, the analysis may be different. However, that is not the case before this Honorable Court.

6. Petitioners in limitation have the burden of proof to establish the application of the Limitation of Liability Act to the facts of this case. *In re Complaint For Exoneration From or Limitation of Liab. of Shell Oil Co. et al.*, 780 F. Supp. at 1088. SailTime has failed to do so here.

**III. The cases cited by SailTime are inapplicable to this case.**

7. Petitioner's reliance on In *In re Houseboat STARSHIP II*, No. 2:05-0086, 2005 WL 3440788 (M.D. Tenn. Dec. 12, 2005 is misplaced. There, the claimants were renting the subject

3

boat from the managers – they were not owners, nor were they on the boat at the invitation of the owner. By contrast, SailTime was not operating the AXESS – Orest Sopka was both owner and operator of the boat through Axess Holding Company LLC. Additionally, the reasoning of *In re Houseboat STARSHIP II* was recently criticized by a court in the same district for not considering the full breadth of the law in *Hickam v. Segars*, 905 F. Supp. 2d 835, 841, n. 5 (M.D. Tenn. 2012).

8. The facts and issues of the other cases cited by SailTime are also inapposite to the facts presented in this case.

- *Dick v. United States*, 671 F.2d 724, 728 (2d Cir. 1982): Holding that for liability purposes, under Coast Guard Auxiliary and Reserve Act, 14 U.S.C. § 827, Congress intended the United States to be treated as owner *pro hac vice* of Coast Guard Auxiliary boats, which become "public vessels" when assigned to Government service.

- *Flink v. Paladini*, 279 U.S. 59, 62 (1929): Holding no more than that state law-created liability of stockholders in a corporation owning a vessel was subject to limitation of liability under the federal Limitation of Liability Act. "For this purpose no rational distinction can be taken between several persons owning shares in a vessel directly and making the same division by putting the title in a corporation and distributing the corporate stock." *Id.* at 62.

- *Complaint of B.F.T. No. Two Corp.*, 433 F. Supp. 854, 873 (E.D. Pa. 1977) and *Petition of U.S.*, 259 F.2d 608, 611 (3d Cir. 1958): Holding that the charterers were potentially liable as the operators of the ships "engaged in the business of navigation" of vessels owned by other concerns, and "it is because of their status as operators that they fall within the scope of the limitations statutes."

- *Complaint of Chesapeake Shipping, Inc*, 803 F.Supp. 872, 873-75 (S.D.N.Y.1992): The company had entered an agreement with the owner that provided, "To the extent permitted by applicable law, [the][o]wner shall have no liability for personal injury claims relating to the [v]essels ... [and the company] shall process all personal injury claims relating to the [v]essels."

- *Admiral Towing Co. v. Woolen*, 290 F.2d 641 (9th Cir. 1961): Mortgagee who came into possession and control of vessel as the first step in process which was to culminate uninterruptedly in becoming holder of legal title became "owner" within Limitation Act.

9. SailTime's attempt to distinguish the only Seventh Circuit case considering the issue is unpersuasive. In *In re Oil Spill By The AMOCO CADIZ*, 954 F.2d 1279, 1302 (7th Cir.1992), the court denied owner status to a management company that assisted with the maintenance and operation of a vessel but was not ultimately responsible for operation, maintenance, or repair of the vessel. The court held that only the actual owner had the requisite degree of "possessory, managerial, and operational control" of the boat; thus, dismissal of the petition to limit liability with regard to AIOC was appropriate. *Id*. at 1303. Similarly, in this case, SailTime assisted with the regular maintenance and operation of the AXESS, and Orest Sopka, as the member of Axess Holding Company LLC, was the owner. (Ex. A at p. 11). Per the Boat Management Agreement the owner was responsible for winter storage, insurance, taxes, and costs of equipment and upgrades. SailTime does not dispute that it expressly disclaimed ownership in the Agreement. It should not be considered an owner solely to limit its liability for its own negligent acts. In light of these facts, SailTime should not be considered an owner, *pro hac vice* or otherwise.

## CONCLUSION

WHEREFORE, Claimant, PEGGY M. BLENNER, as Independent Administrator of the Estate of MEGAN BLENNER, Deceased, requests that this Court dismiss the Complaint for Exoneration from or Limitation of Liability of CREATIVE YACHT MANAGEMENT, INC. d/b/a SAILTIME CHICAGO with prejudice.

Dated February 26, 2015

                                          Respectfully submitted,

                                          /s/ Kevin P. Durkin
                                          Kevin P. Durkin
                                          Sean P. Driscoll
                                          Tracy A. Gibbons
                                          Clifford Law Offices, P.C.
                                          120 North LaSalle Street
                                          Suite 3100
                                          Chicago, Illinois 60602
                                          (312) 899-9090
                                          Attorneys for Claimant Megan Blenner