# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF: THE ) | |
| COMPLAINT OF CREATIVE YACHT ) | |
| MANAGEMENT, INC., d/b/a SAILTIME ) | No. 14 C 9050 |
| CHICAGO, PETITIONING FOR ) | |
| EXONERATION FROM OR ) | |
| LIMITATION OF LIABILITY ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Claimant Peggy M. Blenner's (Blenner),

Claimant Sharon Haws' (Haws), Claimant Shai Wolkowicki's (Wolkowicki), and

Claimant Tamara Sopka's (Sopka) (collectively referred to as "Claimants") motion to

dismiss. For the reasons stated below, the motion to dismiss is granted.

## BACKGROUND

Plaintiff in Limitation Creative Yacht Management, Inc. d/b/a SailTime

Chicago (SailTime) allegedly entered into a Boat Management Agreement

(Management Agreement) with Axess Holding Company, LLC (AHC) on January

26, 2013. The Agreement concerned the motorboat AXESS (Boat), a 2012 Rinker

310 Express Model, bearing serial number RNK00001D112, which was owned by

AHC. SailTime alleges that under the Management Agreement, AHC placed the

Boat into the SailTime Company Program (Program). On May 31, 2014, Orest

Sopka, a member under the Program, used the boat, departing from New Buffalo, Michigan. Also on board were Megan Blenner, Wolkowicki, and Ashley Haws. The Boat allegedly lost power and began to take on water, causing the Claimants to abandon the boat into the waters of Lake Michigan. Only Wolkowicki survived. SailTime contends that there was no fault on its part, and that any claims are not due to any neglect or want of care on its part. SailTime brought the instant action and includes in its complaint an admiralty and maritime claim seeking exoneration from or limitation of liability pursuant to 28 U.S.C. § 13333, the Shipowner's Limitation of Liability Act (Limitation Act), 46 U.S.C. § 30501, *et seq.*, Federal Rule of Civil Procedure 9(h), and Supplemental Rule F of the Federal Rules of Civil Procedure. Blenner has filed a motion to dismiss, and Sopka, Haws, and Wolkowicki have joined in the motion to dismiss.

**LEGAL STANDARD**

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Appert v. Morgan Stanley Dean Witter*, *Inc.*, 673 F.3d 609, 622 (7th Cir. 2012); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a

'speculative level'" and "if they do not, the plaintiff pleads itself out of court."

*E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)

(quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)); *see also*

*Morgan Stanley Dean Witter, Inc.*, 673 F.3d at 622 (stating that "[t]o survive a

motion to dismiss, the complaint must contain sufficient factual matter, accepted as

true, to state a claim to relief that is plausible on its face," and that "[a] claim has

facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct

alleged")(quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009))(internal quotations

omitted).

## DISCUSSION

I. Proper Legal Standard

The court first notes that SailTime, in arguing that the court should not dismiss

the instant action, is relying on a now defunct and much broader notice pleading

standard. SailTime argues that a motion to dismiss should only be granted when the

plaintiff can prove no set of facts that would entitle him to relief, citing in support of

its arguments *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). (Ans. 4). However, the

notice pleading standard set forth in *Conley* was done away with in *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544 (2007). *See id.* at 541 (rejecting from *Conley* the

"accepted rule that a complaint should not be dismissed for failure to state a claim

unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief")(internal quotations omitted); *see also Iqbal*, 556 U.S. at 669-70 (2009)(stating that "*Twombly* retired the Conley no-set-of-facts test"); *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 777 (7th Cir. 2007)(referencing the Supreme Court's "rejection of the famous remark in *Conley v. Gibson*" that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief")(internal quotations omitted). As explained above, the pertinent inquiry under the current law relates mainly to the plausibility of the facts alleged in the complaint.  SailTime's arguments against dismissal of the instant action are thus premised on a more lenient pleading standard that is no longer applicable.


II.  Availability of Act

Claimants argue that SailTime cannot seek relief under the Limitation Act. The owner of a boat or ship may apply to a federal court to seek limitation of liability under the Limitation Act.  *See Complaint of McCarthy Bros. Company/Clark Bridge*, 83 F.3d 821, 826 (7th Cir. 1996)(explaining that the "Limitation Act vests in federal courts exclusive jurisdiction, pursuant to their admiralty jurisdiction under 28 U.S.C. § 1333(1), to decide whether a shipowner's liability should be limited in certain circumstances").

A.  Owner of Boat

Claimants contend that SailTime was not the owner of the Boat and therefore cannot seek a limitation of liability under the Limitation Act.  SailTime has attached to its complaint a copy of the Management Agreement, which can be considered for the purposes of ruling on the motion to dismiss.  *See* Federal Rule of Civil Procedure 10(c)(stating that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes").  The Management Agreement specifically defines AHC as the "Owner" and SailTime as the "Manager."  (Ex. A:1).  The Management Agreement also provides the following:

> 7.3 Ownership of the Boat.  This Agreement is not a lease, sale, or the creation of a security interest.  The Owner shall at all times retain sole ownership and title of the Boat, and the Manager shall not have or at any time acquire any right, title, equity, or other interest in the Boat, except the right to possession and use as provided for in this Agreement.  However, Manager shall have the right to enter into bareboat charters on behalf of Owner, as provided for in the SailTime Member Agreement.

(Ex. A: 5).  The Management Agreement further states that nothing in it "will be interpreted or construed to create any relationship between the Parties other than that of independent contracting entities," and that "neither Party will represent to third parties that any joint venture or other relationship involving joint liability has been created. . . ."  (Ex. A: 10-11).  Thus, a plain reading of the unambiguous terms of the Management Agreement makes clear that SailTime was not the owner, in full or in part, of the Boat.  SailTime also argues that under the terms of the Management Agreement, it stood in the shoes of the owner of the Boat.  (Compl. Par. 14).

However, SailTime has pointed to no terms in the Management Agreement that assigned to SailTime any ownerships right in the Boat. In fact, under the above terms, SailTime explicitly agreed that no such rights were being transferred to SailTime.

###### B. Owner *Pro Hac Vice*

SailTime contends that even if it were not the *de facto* owner of the Boat, it was the owner *pro hac vice* of the Boat. SailTime argues that one who is subjected to a shipowner's liability because of his exercise of dominion over a vessel should be able to limit his liability to that of an owner. (Ans. 4). In *In re Oil Spill by Amoco Cadiz Off Coast of France on March 16, 1978*, 954 F.2d 1279 (7th Cir. 1992), the Seventh Circuit adopted the district court's determination that an "owner" under the Limitation Act includes "persons whose degree of possessory, managerial, and operational control, and relationship to the titleholder of the vessel justifies the inference of their being owners." *Id.* at 1302; *see also Dick v. United States*, 671 F.2d 724, 727 (2nd Cir. 1982)(stating that "[a]s a general rule, one who is subjected to a shipowner's liability because of his exercise of dominion over a vessel should be able to limit his liability to that of an owner"). In *Amoco*, the Seventh Circuit concluded that although certain entities were contracted to "assist and advise" with the maintenance and operation of the ship, the "[u]ltimate authority for maintenance and operation of the [Ship], however, remained with" the actual owner "alone." 954 F.2d at 1302. In the instant action, under the Management Agreement, AHC paid for

6

all of the docking and winter storage, the insurance on the Boat, all taxes associated

with the boat, and all costs of equipment and upgrades.  (Ex. A: 3-8).  SailTime was

hired to maintain, service, and repair the Boat, and SailTime had to seek approval

from AHC before major maintenance or equipment upgrades.  (Ex. A: 5).  Similar to

the relationship addressed in *Amoco*, the record indicates that although SailTime was

hired by AHC for certain maintenance and operational duties, the ultimate authority

remained with AHC.  SailTime has not shown that its role brought it within the scope

of an owner of the Boat, and SailTime, in the terms of the Management Agreement,

clearly disclaimed any role beyond such assistance and advisement.

The Limitation Act contains no language suggesting such a broad scope of

coverage of the Limitation Act as proposed by SailTime.  SailTime has not cited any

controlling precedent which holds that it may seek a limitation of liability based on

such a relationship with an owner.  (Ans. 4-5).   Nor is SailTime's proposed

interpretation of the Limitation Act consistent with the purpose of the Limitation Act.

The Limitation Act was intended to "encourage[] ship-building and investment by

limiting a shipowner's liability to the amount of his interest in the ship."  *Complaint*

*of McCarthy Bros. Company/Clark Bridge*, 83 F.3d 821, 826 (7th Cir. 1996); *see*

*also Joyce v. Joyce*, 975 F.2d 379, 383-84 (7th Cir. 1992)(stating that "[a]s the

Supreme Court stated in Norwich Co. v. Wright, 80 U.S. (13 Wall.) 104, 121, 20

L.Ed. 585 (1871), the purpose of the Act was 'to encourage ship-building and to

induce capitalists to invest money in this branch of industry'"); *In re Stephens*, 341

F. Supp. 1404, 1405-06 (D.C. Ga. 1965)(stating that the Limitation Act was also intended to protect American maritime trade).

In the instant action, the record does not indicate that SailTime is a shipbuilder or an investor in shipbuilding. Nor is there any indication that SailTime was involved in maritime trade or that limiting SailTime's liability would help protect maritime trade. Expanding the scope of the Limitation Act as broadly as proposed by SailTime would not directly further the goals of the Limitation Act. Therefore, based on all of the above, the motion to dismiss is granted.

## CONCLUSION

Based on the foregoing analysis, the motion to dismiss is granted.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: April 8, 2015